CROCKETT *v.* THE CHATTAHOOCHEE BRICK COMPANY.

SIMMONS, C. J.—1. Whether an architect who furnishes designs and undertakes to superintend the construction of a building is also such an agent of the owner as to bind him personally for material furnished to a contractor who undertakes to construct the building, depends upon the contract between the owner and the architect; but whether originally so authorized or not, if the architect assumes to act as such agent, and purchases material upon the credit of the owner with his full knowledge and assent, the latter thereby ratifies the assumed agency of the architect and is bound for the price of the material thus purchased.

2. There was no error in the charges complained of; the requests to charge, so far as pertinent and legal, were covered by the general charge of the court; and even if minor errors were committed in admitting evidence, the same were unimportant, because the illegal evidence was not such as to unduly influence the jury or lead to a wrong result.

3. The verdict, upon the substantial merits of the case, was right, and there was no error in refusing to grant a new trial.

December 21, 1894.                    *Judgment affirmed.*

Complaint on account. Before Judge CLARK. DeKalb superior court. February term, 1894.

Crockett employed Golucke & Foote, architects, to draw plans for houses and see that proper material was used by the contractor, Riden, who, under his contract with Crockett, was to furnish the material and labor. He authorized Golucke & Foote to place orders for material. Their employment with Crockett did not cover the purchase of material. The money was to be paid on approved bills passing through their office. After partially doing the work of building, Riden became embarrassed and gave up the job, and Crockett finished it. While Riden was still the contractor, the plaintiff company furnished 73,500 brick which were used in the construction of the houses, and for the price of which this suit was brought against Crockett. English, the manager of the brick company, testified, over objection, that Golucke & Foote desired to purchase brick as Crockett's

agents and for his buildings, and desired them to be charged to Riden; that witness replied, plaintiff would be glad to sell the brick to Crockett and charge them to him, but did not know Riden and could not sell to him on credit unless Crockett would assume the payment therefor; and that Golucke & Foote said it would be all right with Crockett, and for plaintiff to charge the brick to him; which was done, and they were delivered as shown by the receipts in evidence. The objection was, that the statements of Golucke & Foote were not admissible without showing that they were authorized by Crockett to make them. There was further testimony, that before any of the brick were delivered and after the conversation just referred to, Foote told Crockett the circumstances as to the purchase of the brick; and Crockett stated that it made no difference, that he had the brick to pay for anyhow, and it made no difference whom he paid. Foote had already told the brick company to consider the order placed unless he notified them, and that he would notify them at once if Crockett did not agree to it; and so, after his conversation with Crockett, he gave no further notice to the company. As to his conversation with Crockett, Foote was corroborated by Golucke and by an employee in their office. Crockett testified, that he did not remember anything said about the brick, except that Foote might have told him they were buying them from plaintiff, but he never intimated that Crockett was to pay for them or had anything to do with the paying; that he did not remember what he said to Foote, and if Foote ever spoke to him about having an account with the brick company, he did not know anything about it; that Foote never told him anything about it, because he (Crockett) was not to pay anybody but Riden; that all the money he was to pay was to go into Riden's hands, and he had no authority to pay the company or any one else.

Defendant assigned error on the overruling of the objection before noted, and on the following charge to the jury, as without evidence to authorize it: "Now, if you shall believe from the evidence that Mr. Foote, by virtue of his being the architect and supervisor of the buildings, went to the Chattahoochee Brick Company to purchase these brick in the name of Mr. Riden, and that the Chattahoochee Brick Company refused to credit Mr. Riden, not knowing him, but as Mr. Crockett was the owner of the property they would be willing to credit Mr. Crockett, and then Mr. Foote told them to charge them to Mr. Crockett unless Mr. Crockett refused to have it done, that he would inform him, and if he did not send them word that Mr. Crockett had refused to carry out the contract that he had made, refused to be liable for it, then they might deliver the brick;—now, if you believe from the evidence, that Mr. Foote, before the delivery of any of the brick, informed Mr. Crockett of all the circumstances that occurred between him and the Chattahoochee Brick Company, and Mr. Crockett assented to that, and the bricks were afterwards delivered, that would make Mr. Crockett, in the law, the original contractor, that he contracted the debt originally himself, that that credit was extended to him. But if, on the other hand, you do not believe there was a statement made of all the circumstances connected with it, of the manner in which this was brought about, to Mr. Crockett, or that Mr. Crockett did not assent to it, did not assent to the arrangement which Mr. Foote had made, then of course it would follow that he would not be liable. That is simply a question of evidence for you to decide, applying the law I have given you in charge to the evidence."

The court further charged: "Now, there is a rule that the judge may give to the jury as to how they shall consider and treat the evidence. If the evidence in the

case is conflicting, then the jury may found their verdict on what they believe to be a preponderance of the evidence. By the preponderance is meant the greater weight of the evidence; hence, if the evidence is both ways, that Mr. Crockett did assent to this arrangement, on the one side, and that Mr. Crockett did not assent to this arrangement, on the other side, why then you are to come to your conclusion from the greater weight of the evidence, provided you cannot reconcile the evidence so as to make it speak all one way. It is the duty of the jury to reconcile the evidence if they can, so as to make it all speak one way; but if they cannot reconcile it, then the law allows them to find, as I have stated to you, upon the preponderance or greater weight of the evidence." Alleged to be error, because it confines the application of the rule to a particular portion of the testimony (as to the assent of Crockett to an arrangement made by a witness on the other side), thereby intimating that there was a conflict of evidence on this question, and that the finding of the jury should be as they should determine this question.

Other assignments of error, on the admission of evidence over objection for irrelevancy, need not be stated.

CANDLER & THOMSON, for plaintiff in error.
JOHN S. CANDLER, contra.